IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEIONNA S. REESE, )
)
      Plaintiff, )
) No. 05 C 7144
v. )
)
JOHN E. POTTER, Postmaster General, )
)
      Defendant. )

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

In her Complaint, Plaintiff Keionna Reese alleges that her former employer, the United States Postal Service ("USPS"), discriminated against her based on her sex and disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.* Before the Court is the USPS' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(b).[1] For the following reasons, the Court grants Defendant's motion.

**BACKGROUND**

**I.    Northern District of Illinois Local Rule 56.1 Statements**

When determining summary judgment motions, the Court derives the background facts from the parties' Local Rule 56.1 statements. Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of*

---

[1] In its legal memoranda, Defendant maintains that it is also bringing a motion to dismiss, but the only pending motion before the Court is Defendant's Motion for Summary Judgment. (R. 55-1, Mot. Summ. J.)

*Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Specifically, Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 944 (7th Cir. 2005). The parties' statements must contain short numbered paragraphs including references to the affidavits, parts of the record, and other supporting materials. *See id.; see also Ammons,* 368 F.3d at 817. In essence, the purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006).

A litigant's failure to respond to a Local Rule 56.1 statement results in the Court admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The Court may disregard statements and responses that do not properly cite to the record. *See Cichon v. Exelon Generation Co., L.L.C.* 401 F.3d 803, 809-10 (7th Cir. 2005); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). Finally, the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. With these standards in mind, the Court turns to the relevant facts of this case.

## II. Relevant Facts

### A. Sexual Harassment Allegations

In October 2000, Plaintiff Keionna Reese began working as a part-time letter carrier at

2

the post office in Wheeling, Illinois. (R. 70-1, Def.'s Rule 56.1 Stmt. Facts ¶ 10; R. 71-1, Pl.'s Rule 56.1 Add'l Facts ¶ 7.) Prior to working at the Wheeling post office, Reese served in temporary positions at a different post office facility. (Def.'s Stmt. Facts ¶ 10.) In December 2001 or January 2002, Reese complained to Antonette Jones, the postmaster of the Wheeling post office, that Ted Feggins, a window clerk at the Wheeling facility, sexually harassed her during an off-work confrontation.[2] (*Id.* ¶ 11.) Jones immediately advised Reese to file a police report, and then placed Feggins on a paid suspension pending an internal investigation. (*Id.* ¶ 12.) After Jones contacted the Postal Inspection Service, she also conducted interviews with several employees to ascertain if there had been any previous issues with Feggins. (*Id.* ¶ 14.) The Postal Inspection Service conducted an independent investigation, but was unable to confirm whether Reese's allegations were valid. (*Id.* ¶ 15.)

Meanwhile, Jones instructed Feggins to stay away from Reese when he returned to work after his suspension. (*Id.* ¶ 16.) For the most part, Reese and Feggins did not work in the same area at the Wheeling post office – Feggins worked inside the building as a window clerk and Reese worked outside delivering mail. (*Id.* ¶ 17.) Jones further limited the contact between Feggins and Reese by allowing Reese to turn in her accountable items, such as certified mail, to a supervisor rather than the accountable clerk on the occasions when Feggins acted as back-up clerk. (*Id.* ¶ 18.) Although Reese filed a police report concerning Feggins' conduct, she never

---

[2] In Plaintiff's responses to Defendant's Statement of Facts ¶¶ 2, 3, 11, 12, 14, 15, 16, 17 and 46, Plaintiff fails to reference affidavits, parts of the record, or any other materials to support her denial of these statements. *See Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 944 (7th Cir. 2005). Because Plaintiff's responses do not cite to the record, the Court disregards these unsubstantiated responses and admits Defendant's statements as true. *See Cichon v. Exelon Generation Co., L.L.C.* 401 F.3d 803, 809-10 (7th Cir. 2005); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

3

initiated an administrative complaint of discrimination based on Feggins' alleged sexual harassment. (*Id.* ¶¶ 13, 19; Pl.'s Stmt. Facts ¶ 14.) Moreover, the police never charged Feggins with a crime. (Def.'s Stmt. Facts ¶ 13.)

### B. Reese's Injury and Workers Compensation Claim

On September 16, 2004, Reese filed a claim for workers compensation benefits after she reported that her postal vehicle was struck by a truck while she was making a delivery. (*Id.* ¶ 25.) On September, 20, 2004, Reese obtained a note from Dr. David Cavazos, a chiropractor, indicating that Reese was "temporarily totally disabled for one to two weeks." (*Id.* ¶ 26.) Three days later, Dr. Callahan, Reese's family physician, examined her and prescribed "strict bed rest." (*Id.* ¶ 27.)

Thereafter, the USPS' Injury Compensation Office initiated an investigation into Reese's injury compensation claim. (*Id.* ¶ 28.) On September 29, 2004, postal service inspectors observed Reese standing on the front porch of her residence, walking down steps, and driving away from her home at approximately 1:00 p.m. and returning at approximately 3:00 p.m. (*Id.* ¶ 29.) Meanwhile, on September 30, 2004, Dr. Callahan re-examined Reese and – pursuant to the OWCP disability claim Form CA-17 – Dr. Callahan indicated that Reese was suffering from upper and lower back pain and soft tissue muscle spasms in her right arm and neck and advised Reese not to return to work. (*Id.* ¶ 30; Pl.'s Stmt. Facts ¶ 36.) The Form CA-17 further indicated that Reese was incapable of standing, walking, bending, stooping, climbing, simple grasping, or driving a vehicle. (Def.'s Stmt. Facts ¶ 30.) Also on September 30, 2004, Dr. Callahan responded to a letter dated September 28, 2004, from a Postal Service Injury Compensation Specialist in which he asserted that Reese could not work any type of limited duty

4

job and was totally disabled because she had severe back pain, needed physical therapy, and was on medication. (*Id*. ¶ 31.)

Nevertheless, on September 30, 2004, postal inspectors observed Reese driving her vehicle, walking with her child to the school bus, jogging a few steps, standing next to a car and talking with its occupant, and walking down the street. (*Id*. ¶ 32.) On October 1, 2004, the postal inspectors observed Reese driving her car and walking up and down her home porch stairs. (*Id*. ¶ 33.) Again, on October 4, 5, and 6, the postal inspectors observed Reese engaging in similar activities as described above. (*Id*. ¶¶ 34, 36, 38.) Likewise, on October 8, 10, and 11, the postal inspectors observed Reese driving a car. (*Id*. ¶¶ 39, 40, 41.)

On November 16, 2004, the postal inspectors interviewed Reese. (*Id.* ¶ 42.) The investigative memorandum the postal inspectors prepared indicates that Reese told them she had not driven her car from September 17, 2004 until the end of the first week of October, that her treating physician told her not to drive, and that she was totally disabled due to the medications she was taking. (*Id*.) After the postal inspectors informed Reese that they had observed her driving and performing other activities, Reese admitted that she drove a few times on days when she was feeling better and did not take her medication. (*Id*. ¶ 43.)

After the interview with Reese, the postal inspectors provided postmaster Jones with copies of the materials from their investigation, including copies of their investigative memorandum and exhibits, as well as surveillance videotapes of Reese. (*Id*. ¶ 45.) Based on the postal inspector's investigation, Reese's immediate supervisor, Thomas Koulentes, issued a December 17, 2004, notice of removal (discharge) to Reese for "Engaging in Activities Inconsistent with Your Claim of Total Disability." (*Id*. ¶ 46.) Koulentes and Postmaster Jones

also based their decision to terminate Reese's employment on Reese's prior disciplinary infractions. (*Id*.) The effective date of Reese's discharge was January 29, 2005. (*Id*.)

### C. Reese's Administrative EEO Claim

After the USPS terminated Reese's employment, she initiated an administrative EEO claim of discrimination. (*Id*. ¶¶ 1, 46.) Through a notice dated March 23, 2005, the USPS informed Reese of her right to file a formal administrative complaint of discrimination. (*Id*. ¶ 1.) The notice also informed Reese that she was required to file her formal administrative complaint within 15 days of receipt of the notice letter. (*Id*.; Pl.'s Stmt. Facts ¶ 54.) The notice, however, also stated that "for timeliness purposes, it will be presumed that this document ... was received within five (5) days after it was mailed." (Def.'s Stmt. Facts ¶ 1; Pl.'s Stmt. Facts ¶ 55, Ex. 3, Notice.) The USPS received a confirmation of the notice's delivery to Reese's residence dated March 24, 2005. (Def.'s Stmt. Facts ¶ 2.) Reese, on the other hand, contends that she did not receive the notice until March 30, 2005, because she was on vacation. (*Id*.; Pl.'s Stmt. Facts ¶ 56.) Reese filed her formal administrative complaint on April 12, 2005, which was after the 15-day deadline that started on March 24, 2005. (Def.'s Stmt. Facts ¶ 2.) The USPS then issued a final agency decision dismissing Reese's administrative complaint as untimely based on her failure to file a formal administrative complaint within the 15-day time limit. (*Id.* ¶¶ 2, 3.)

On appeal to the EEOC, Reese unsuccessfully argued that the 15-day time limit did not being to run until March 30, 2004, when she returned from vacation. (*Id.* ¶ 4.) The EEOC rejected her argument citing EEOC precedent that being out of town is insufficient to merit equitable tolling of the 15-day deadline. (*Id.* ¶ 5.) The EEOC further noted that Reese had sufficient time after returning from her vacation to complete and mail her formal complaint

6

before the deadline expired. (*Id.*) Meanwhile, counsel represented Reese during her EEO administrative proceedings. (*Id.* ¶ 6.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## ANALYSIS

**I.     Timeliness of Reese's Claims**

The USPS first argues that the Court must dismiss Reese's discriminations claims because she failed to exhaust her mandatory administrative remedies in a timely fashion. *See Smith v. Potter,* 445 F.3d 1000, 1002 (7th Cir. 2006); *Ester v. Principi,* 250 F.3d 1068, 1071 (7th Cir. 2001). When a federal employee wants to file a federal lawsuit based on unlawful

discrimination, the employee must first follow certain administrative procedures set forth in 29 C.F.R. § 1614. *See Smith,* 445 F.3d at 1004-06; *see also Lapka v. Chertoff,* 517 F.3d 974 (7th Cir. 2008). First, the federal employee must submit an informal "Information for Pre-Complaint Counseling" to the federal agency's EEO office within 45 days after the final agency decision. *See Smith,* 445 F.3d at 1004; *see also* 29 C.F.R. §§ 1614.103(b)(3), 1614.105(a). If the EEO office does not resolve the matter to the federal employee's satisfaction, the EEO office sends the employee a "Notice of Right to File Individual Complaint" informing the employee that if she wants to pursue her discrimination claim further, she has 15 days to file a formal administrative complaint. *See Ester*, 250 F.3d at 1071; *see also* 29 C.F.R. §1614.106(b). If the EEO office does not resolve the formal administrative complaint in the employee's favor, the employee may file a lawsuit in federal court after the EEOC issues a right-to-sue letter. *See Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003) ("Title VII does not authorize the filing of suit until the plaintiff has exhausted his administrative remedies, 42 U.S.C. § 2000e-16(c), which means not until he has received a right-to-sue letter from the EEOC, signifying that the EEOC will not provide him with any relief."). If a plaintiff fails to exhaust her administrative remedies in a timely fashion, the federal district court must dismiss her claims as unexhausted. *Ester,* 250 F.3d at 1071. "The requirement that a federal employee exhaust available administrative remedies in a timely fashion is subject to the doctrines of waiver, estoppel and equitable tolling." *Id.*

In support of its argument that Reese has failed to exhaust her administrative remedies in a timely fashion, the USPS relies upon the EEOC's decision finding that Reese received the "Notice of Right to File Individual Complaint" on March 24, 2005, and that the 15-day time

limit began to run on that date, instead of March 30, 2005, when Reese returned from her vacation. In Title VII actions, however, the Court is under no obligation to defer to the EEOC's determinations because the Court is required to perform a de novo review of the record, including the administrative agency proceedings. *See Smith,* 445 F.3d at 1011. Nevertheless, the USPS also points to binding Seventh Circuit authority holding that "the actual notice rule does not apply to plaintiffs who fail to receive actual notice through their own fault." *Houston v. Sidley & Austin,* 185 F.3d 837, 839 (7th Cir. 1999); *see also Bobbitt v. Freeman Co.,* 268 F.3d 535, 538 (7th Cir. 2001) ("extensive travel schedule" did not excuse failure to receive actual notice). Moreover, the "law presumes timely delivery of a properly addressed piece of mail." *Bobbitt,* 268 F.3d at 538. Based on this precedent and the circumstances in this case, Reese failed to exhaust her administrative remedies in a timely fashion because she received notice on March 24, 2005, but did not file her formal administrative complaint until April 12, 2005 – over 15 days after receiving notice. Moreover, Reese does not argue that the 15-day deadline should be equitably tolled. *See Ester,* 250 F.3d at 1071. Despite Reese's failure to timely exhaust her administrative remedies, the Court will nonetheless address the merits of Reese's discrimination claims for the sake of completeness.

## II.     Title VII – Sex Discrimination Claims

### A.     Retaliation

Reese first alleges that the USPS terminated her employment in retaliation because she made an internal complaint alleging that her co-worker, Ted Feggins, had sexually harassed her. Under Title VII, it is unlawful for an "employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter,

9

or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII's "anti-retaliation provision seeks to secure th[e] primary objective [of] preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 2412, 165 L.Ed.2d 345 (2006). A plaintiff may establish a retaliation claim under either the direct or indirect method of proof. *Benders v. Bellows & Bellows,* 515 F.3d 757, 764 (7th Cir. 2008).

Here, Reese attempts to establish her retaliation claim under the direct method of proof. The direct method "requires that the plaintiff adduce either 'direct or circumstantial evidence that the employer's decision to take the adverse job action was ***motivated by an impermissible purpose***.'" *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.,* 517 F.3d 470, 473-74 (7th Cir. 2008) (citation omitted) (emphasis added). To successfully establish a retaliation claim under the direct method, Reese must present evidence (1) that she engaged in a statutorily protected activity, (2) the USPS subjected her to an adverse action, and (3) a causal connection between the two. *Gates v. Caterpillar, Inc.,* 513 F.3d 680, 686 (7th Cir. 2008). A "causal link between the protected expression and an adverse employment action may be established by showing that the protected conduct was a substantial or motivating factor in the employer's decision" *Id.* (citation omitted); *see also Tubergen,* 517 F.3d at 473-74.

Reese argues that she has presented sufficient evidence that the USPS terminated her employment based on her sexual harassment allegations because (1) she was the first and only woman to bring a sexual harassment complaint at the Wheeling facility, (2) men out-numbered

10

women at the Wheeling facility by four to one, and (3) postmaster Jones stated that if someone had sexually harassed her, she would have told him that his conduct was inappropriate. Assuming these facts are true and viewing them in Reese's favor, Reese's evidence does not support a causal link that her sexual harassment complaint was the motivating factor in her discharge. *See Gates*, 513 F.3d at 686. Instead, the undisputed evidence in the record indicates that the USPS discharged Reese because she claimed she was totally disabled – and received workers compensations benefits based on her disability – while she engaged in physical activities inconsistent with her disability claim. *See Nichols v. SIU-Edwardsville*, 510 F.3d 772, 785 (7th Cir. 2007) ("baseless claims do not receive protection under Title VII"). Moreover, Reese complained to postmaster Jones about Feggins' alleged sexual harassment in January 2002 and the USPS terminated Reese's employment in December 2004. Accordingly, there was no temporal proximity supporting an inference of a causal link between the two events. *See Lewis v. City of Chicago,* 496 F.3d 645, 655-56 (7th Cir. 2007). Because there is no evidence in the record suggesting that the USPS' actions were motivated by anything other than Reese's misconduct, the Court grants the USPS' summary judgment motion as to Reese's retaliation claim. *See Gates*, 513 F.3d at 686; *Nichols*, 510 F.3d at 785-86.

**B.     Sex Discrimination[3]**

Reese also alleges that the USPS terminated her employment based on her sex. Under

---

[3] In response to Defendant's summary judgment motion, Reese does not make arguments concerning her sex discrimination and disability discrimination claims as alleged in her Complaint. Normally, the absence of any discussion concerning claims alleged in a complaint amounts to the abandonment of those claims. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007). For the sake of completeness, however, the Court will address Reese's sex discrimination and disability discrimination claims as alleged in her Complaint.

Title VII, it is an unlawful employment practice for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As with her retaliation claim, Reese may establish her sex discrimination claim through the direct or indirect method of proof. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Gates,* 513 F.3d at 690. Because Reese does not present direct evidence of sex discrimination, the Court turns to the indirect method of proof. Under the indirect method of proof, Reese must first establish a prima facie case of sex discrimination by showing that: (1) she is a member of a protected class; (2) she was meeting the USPS' legitimate job expectations; (3) the USPS subjected her to an adverse employment action; and (4) the USPS treated similarly situated individuals outside of her protected class more favorably. *See Gates,* 513 F.3d at 690.

The Court turns to the fourth prong of Reese's prima facie case, namely, the similarly situated element, because it is dispositive. An employee is "similarly situated" if that employee is comparable to the plaintiff in all material respects. *Warren v. Solo Cup Co.,* 516 F.3d 627, 631 (7th Cir. 2008). When determining whether employees are directly comparable, the Court examines certain relevant factors depending on the context of the case, including whether the employees (1) had the same job description, (2) were subject to the same standards, (3) had the same supervisor, and (4) had comparable experience, education, and other qualifications. *Id.*; *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 405 (7th Cir. 2007). Put differently, "[a]n employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such

12

differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 538 (7th Cir. 2007). The purpose of the similarly situated test "is to determine whether there are enough common factors between a plaintiff and a comparator – and few enough confounding ones – to allow for a meaningful comparison in order to divine whether discrimination was at play." *Barricks v. Eli Lilly & Co.,* 481 F.3d 556, 560 (7th Cir. 2007).

Reese presents evidence of two men who retained their jobs after allegedly falsifying or misrepresenting their medical conditions. (Def.'s Stmt. Facts ¶¶ 7, 8.) Neither of these postal employees worked at the Wheeling facility, and thus these employees did not answer to postmaster Jones or Reese's immediate supervisor, Tom Koulentes. (*Id.* ¶ 8.) Meanwhile, Reese does not provide any additional information about these comparators, such as their job descriptions or the nature of their misconduct. Without more information concerning these individuals, the Court cannot make a meaningful comparison to determine whether unlawful discrimination was at issue. *See Barricks,* 481 F.3d at 560. As such, Reese has failed to establish the fourth element of her prima facie case of sex discrimination, and thus her sex discrimination claim fails. *See Maclin v. SBC Ameritech,* ___ F.3d ___, No. 07-1751, 2008 WL 852582, at *4 (7th Cir. Apr. 1, 2008) (discrimination claim necessarily fails if plaintiff cannot establish all four prima facie elements). Finally, because Reese has failed to establish a prima facie case of sex discrimination, the Court need not examine whether the USPS' reason for the alleged discriminatory action was pretext for discrimination. *See Burks v. Wisconsin Dept. of Transp.,* 464 F.3d 744, 754 (7th Cir. 2006).

### III. ADA Discrimination Claim

Reese also alleges that the USPS terminated her employment based on her disability, namely, her long term muscle spasms. "The Americans with Disabilities Act ("ADA") prohibits discrimination against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Williams v. Excel Foundry & Mach., Inc.,* 489 F.3d 309, 310 (7th Cir. 2007) (quoting 42 U.S.C. § 12112(a)); *see also Garg v. Potter,* ___ F.3d ___, No. 07-2377, 2008 WL 901462, at *4 (7th Cir. Apr. 4, 2008) (ADA prohibits employers from discriminating against qualified individual with a disability based on that disability). To establish a prima facie case of disability discrimination, Reese must present evidence that: (1) she is disabled within the meaning of the ADA; (2) she was meeting the USPS's legitimate job expectations; (3) she suffered an adverse employment action; and (4) the USPS treated similarly situated employees outside of Reese's protected class more favorably. *Kampmier v. Emeritus Corp.,* 472 F.3d 930, 937 (7th Cir. 2007).

The Court turns to the threshold question of whether Reese is disabled under the ADA because it is dispositive. To show that she is disabled within the meaning of the ADA, Reese must present evidence that (1) she has a physical or mental impairment that substantially limits one or more major life activities, (2) there is a record of such an impairment, or (3) the USPS regards her as having an impairment that substantially limits one or more major life activities. *See id.* (citing 42 U.S.C. § 12102(2)(A)-(C)).

Reese makes no arguments under any of these options, but simply claims that she has the physical impairment of long term muscle spasms. Viewing the facts and all reasonable

14

inferences in Reese's favor, Reese has failed to set forth sufficient evidence that her muscle spasms were anything more than temporary, intermittent, or episodic in nature, and thus her alleged impairment is not a disability as defined by the ADA. *See Ogborn v. United Food & Commercial Workers Union,* 305 F.3d 763, 767 (7th Cir. 2002) (collecting cases). Because Reese has failed to established that she is disabled under the statute, her disability discrimination claim fails.

## CONCLUSION

For the foregoing reasons, the Court grants the Defendant's Motion for Summary Judgment. The Court denies Defendant's Motion to Strike as moot.

Dated: April 17, 2008

                                **ENTERED**

                                **AMY J. ST. EVE**
                                **United States District Court Judge**